IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs May 17, 2017

**STATE OF TENNESSEE v. ELIJAH OGLE**

**Appeal from the Circuit Court for Sevier County**
**No. 14593, 14864, 14594, 14966-III      Rex H. Ogle, Judge**

_____

**No. E2016-02468-CCA-R3-CD**

_____

The Defendant, Elijah Ogle, pled guilty to aggravated burglary, robbery, aggravated assault, three counts of aggravated domestic assault, three counts of illegal possession of a firearm, domestic assault, possession of a weapon with the intent to go armed, possession of marijuana with the intent to sell or deliver, possession of a controlled substance, and possession of drug paraphernalia. He received an effective ten-year sentence which was to be served on probation.  A violation of probation warrant was issued against the Defendant, charging him with having been arrested for aggravated domestic assault, failing to report the arrest to his probation officer, failing to refrain from contact with the victim, and continuing to engage in assaultive behavior.  Following a hearing, the trial court revoked the Defendant's probation and ordered him to serve his sentence in prison.  The Defendant appeals.  After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Edward C. Miller, District Public Defender, and Amber D. Haas, Assistant District Public Defender, for the appellant, Elijah Ogle.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Jimmy B. Dunn, District Attorney General; and Tim Norris, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# FACTUAL AND PROCEDURAL HISTORY

The Defendant was charged with aggravated burglary, aggravated robbery, aggravated assault, three counts of aggravated domestic assault, three counts of illegal possession of a firearm, domestic assault, possession of a weapon with the intent to go armed, possession of marijuana with the intent to sell or deliver, possession of a controlled substance, and possession of drug paraphernalia.

We glean from the technical record the following facts underlying the aforementioned charges. On April 15, 2009, the Defendant arrived at his home drunk and threatened to kill his then-fiancée, Ms. Erin McArdle. He also punched holes in the wall, took Ms. McArdle's keys, and would not let her leave the house. As Ms. McArdle showed the officers the damage to the wall, the officers observed marijuana and drug paraphernalia in plain view. On May 22, 2009, the Defendant gave consent for an officer to search his vehicle, and the officer discovered marijuana inside of the Defendant's jacket which was on the backseat of the vehicle. During the search, the officer also found a pair of brass knuckles. On July 19, 2009, the Defendant burglarized Mr. Jay Hampton's apartment, firing a gunshot near Mr. Hampton's head, demanding money from Mr. Hampton, and fleeing the scene with $1,300. On August 16, 2009, the Defendant threatened Ms. McArdle and her mother with a firearm and punched Ms. McArdle in the head.

On July 25, 2011, pursuant to a guilty plea, the Defendant was convicted of aggravated burglary, robbery, aggravated assault, three counts of aggravated domestic assault, three counts of illegal possession of a firearm, domestic assault, possession of a weapon with the intent to go armed, possession of marijuana with the intent to sell or deliver, possession of a controlled substance, and possession of drug paraphernalia and was sentenced to an effective ten years on probation.

On August 2, 2015, trial court issued a violation of probation warrant against the Defendant, alleging that the Defendant had illegally possessed a firearm, possessing a firearm, and engaged in assaultive and threating behavior. On September 29, 2015, the trial court partially revoked the Defendant's probation, accepting the Defendant's plea to the violation of probation and ordering him to serve 365 days in confinement with the remainder on probation. On August 9, 2016, the Defendant's probation officer filed a violation of probation report, alleging that the Defendant was arrested for aggravated domestic assault, failed to report the arrest to his probation officer, failed to refrain from contact with the victim as required by an order of protection, and engaged in assaultive behavior.

On October 18, 2016, at the revocation of probation hearing, Ms. McArdle, the victim of the aggravated domestic assault that forms the basis of the instant revocation, testified that the Defendant was the father of her children. Ms. McArdle testified that prior to the aggravated domestic assault, the Defendant asked her to come to the Days Inn where he was with their children. She believed that the Defendant simply wanted to let her see her children, and she decided to go. She explained that upon arriving at the Days Inn, she discovered the Defendant drinking and decided to talk with him. She testified that they were arguing over their children and that the Defendant called her a "whore." Ms. McArdle testified that the Defendant "just totally flipped out" and choked her. She explained that she thought she was going to die. She stated that the Defendant hit her, threw her, and caused damage to the room. Ms. McArdle testified that the Defendant fractured her larynx during the attack. She also testified that she was able to escape and run across the street to her workplace.

Ms. McArdle testified that upon reaching her workplace, she did not tell anyone about the attack because she did not want the police to get involved and take the children away. She explained that she did not have custody rights at the time and that the Defendant had full custody. She stated that the following day, she went to the hospital for treatment for her injuries from the attack and reported the attack to the police. The doctor at the hospital gave her a neck brace to stabilize her larynx. Several photographs of her neck injury were admitted into evidence, and Ms. McArdle characterized the photographs as showing the bruising around her neck where the Defendant had choked her. She explained that the photographs were taken either during her visit at the hospital or the following day. She testified that she had other injuries from the attack, including bruising on her arms, legs, and face. Additional photographs of her arms were admitted into evidence, and Ms. McArdle explained that the photographs showed bruises on her arms and were taken at the hospital. Another photograph was introduced of Ms. McArdle's forehead, and Ms. McArdle identified a knot and a bruise on her forehead, which resulted from the Defendant's attack. A photograph of Ms. McArdle's face was introduced, and Ms. McArdle identified a bruise between her eyebrow and the right side of her eye.

She stated that after the Defendant was arrested for the aggravated domestic assault, he left about 202 voicemails on her telephone. She testified that she did not contact the Defendant when he was jail, that she did not want the Defendant to contact her, and that she told the Defendant to leave her alone.

On cross-examination, Ms. McArdle testified that she does not have custody of her children because she has spent time in jail and is a recovering drug addict. She stated that even though the Defendant is in jail, she is unable to get custody of her children. She acknowledged that her prior conviction was for prescription medication fraud, which is a

crime of dishonesty. Ms. McArdle testified that she did not remember exactly when the photographs of her injuries were taken but maintained that they were taken on either the day she visited the hospital or the following day. She stated that she was not admitted into the hospital but rather treated and released from the emergency room within a day. She also stated that she did not have follow-up examinations except one visit to get an antibiotic for her throat.

On direct examination, Officer Michael Gulley, a probation officer with the Tennessee Department of Correction, testified that he had not witnessed any intimidating behavior from the Defendant. On cross-examination, he stated that he was not the Defendant's supervising officer but rather the "records keeper." He also stated that the Defendant had completed several courses and programs during his probation, including "Team Dad," an anger management class, DUI school, a victim impact panel, a mental health assessment, and a child care class. Officer Gulley testified that the Defendant had regularly reported to his probation officer as required. He also testified that the Defendant failed a drug screen on July 5th, 2016, testing positive for marijuana. He acknowledged that the Defendant did not have any other new convictions since being placed on probation except for the instant aggravated domestic assault.

The Defendant testified Ms. McArdle lost custody of their children because she is "a prostitute and a needle junkie." He also testified that during his probation he completed an anger management class, three mental health assessments, four alcohol and drug assessments, a newborn baby class that he was not required to complete, and a parenting program called "Team Dad" where he serves as a volunteer. The Defendant stated that he had not seen Ms. McArdle and did not know how her account of the events was believed. He also stated that his children would be put up for adoption if he were sent to prison. He characterized Ms. McArdle as "mad" and "malicious."

On cross-examination, the Defendant denied calling Ms. McArdle from the jail and asked the prosecutor to produce evidence of the alleged calls. The State then played a recording of a voicemail. The Defendant denied that it was his voice on the recording, blaming the voicemail left on Ms. McArdle's phone on Ms. McArdle's nephew who was in jail at the same time as the Defendant. The Defendant admitted to being angry during his testimony at the hearing, explaining that his children were taken from him and that he was in jail based "on the word of somebody who lies to get what they want." He maintained that he stayed away from Ms. McArdle and did not assault her. He denied previously pleading guilty to assaulting Ms. McArdle "several times." We note that the underlying convictions included domestic assault convictions in which Ms. McArdle was the victim.

Following the proof, the trial court noted that both the Defendant and Ms. McArdle had some credibility issues. Nevertheless, the trial court found, by a preponderance of the evidence, that the Defendant assaulted Ms. McArdle and, thus, violated the law. Accordingly, the trial court found that the Defendant had violated his probation by committing the aggravated domestic assault against Ms. McArdle. The trial court found that Ms. McArdle's testimony, along with the photographs of her injuries, was credible. The trial court also found that because Ms. McArdle voluntarily made contact with the Defendant, he did not violate his probation through violating the restraining order. At the conclusion of the hearing, the trial court revoked the Defendant's probation and ordered him to serve his sentence in confinement.

## ANALYSIS

On appeal, the Defendant argues that the trial court abused its discretion when it revoked his probation because the trial court did not have sufficient evidence to support its determination that the Defendant had committed aggravated domestic assault. He also argues that the trial court abused its discretion by failing to consider alternatives to incarceration. The State contends that the trial court had substantial evidence to revoke the Defendant's probation and that the trial court properly ordered the Defendant to serve his sentence in confinement. We agree with the State.

A trial court may revoke a sentence of probation if it determines by a preponderance of the evidence that the conditions of probation have been violated. T.C.A. § 40-35-311(e). Upon revocation, the trial court may either "commence the execution of the judgment as originally entered" or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." *Id.* The trial court's decision to revoke the defendant's probation is reviewed for abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Abuse of discretion is found when the appellate court determines that the trial court "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). Reversal of a revocation is only warranted if "the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *Harkins*, 811 S.W.2d at 82. Proof of the violation is adequate when it provides the basis for a "conscientious and intelligent" judgment. *Id.* The trial court's findings of fact and determinations regarding the credibility of witnesses carry the weight of a jury verdict. *State v. Beard*, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005). Accordingly, the trial court's findings are binding on the appellate court unless the evidence preponderates otherwise. *State v. Lewis*, 917 S.W.2d 251, 257 (Tenn. Crim. App. 1995).

Here, the trial court found Ms. McArdle's testimony, coupled with the photographs of her injuries, to be credible. Based on the evidence provided at the hearing, the trial court determined that the Defendant had assaulted Ms. McArdle. The evidence in the record before us does not preponderate against the trial court's finding that the Defendant committed an aggravated domestic assault against Ms. McArdle and, thus, had violated his probation. *See Lewis*, 917 S.W.2d at 257. Moreover, the record indicates that the Defendant's probation was previously revoked, and the trial court gave the Defendant the opportunity to continue with probation following a period of confinement. We note that, contrary to the Defendant's contention, a trial court is not required to consider alternatives to incarceration after it has revoked a defendant's probation. *See* T.C.A. § 40-35-310(a), -311(e). We hold that because the trial court had substantial evidence to support its conclusion that the Defendant violated his probation, the trial court properly exercised its discretion by revoking the Defendant's probation and ordering the Defendant to serve his sentence in confinement. *See id.* § 40-35-311(e). Accordingly, reversal of the trial court's revocation is unwarranted.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE